IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HENRY JACOBS, On Behalf of Himself and All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>SPARTON CORPORATION, JOSEPH J. HARTNETT, ALAN L. BAZAAR, JAMES D. FAST, JOHN A. JANITZ, CHARLES R. KUMMETH, DAVID P. MOLFENTER, JAMES R. SWARTWOUT and FRANK A. WILSON,<br><br>       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:17-cv-1731<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**Judge**<br><br><u>**JURY DEMAND ENDORSED HEREON**</u> |

Plaintiff Henry Jacobs ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is a class action brought on behalf of the public stockholders of Sparton Corporation ("Sparton" or the "Company") against Sparton and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Sparton will be acquired by Ultra Electronics Holdings

plc ("Ultra") through its indirect wholly owned subsidiary, Ultra Electronics Aneira Inc. ("Merger Sub") (the "Proposed Transaction").

2. On July 7, 2017, Sparton and Ultra issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Sparton to Ultra. Under the terms of the Merger Agreement, Ultra will acquire all outstanding shares of Sparton for $23.50 in cash per Sparton common share (the "Merger Consideration"). The Proposed Transaction is valued at approximately $235 million.

3. On August 7, 2017, Sparton filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the SEC. The Proxy, which recommends that Sparton stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things, (i) the background process leading to the Proposed Transaction, including the non-disclosure agreements ("NDAs") Sparton entered into with other potential bidders; (ii) potential conflicts of interest faced by Raymond James & Associates, Inc. ("Raymond James") and Wells Fargo Securities, LLC ("Wells Fargo"), the Company's financial advisors; (iii) the Company's financial projections, which were prepared by Company management and relied upon by Raymond James and Wells Fargo in support of their fairness opinions; and (iv) the inputs and assumptions underlying Wells Fargo and Raymond James' financial analyses. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Sparton stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4. In short, unless remedied, Sparton's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin

the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Sparton.

9. Defendant Sparton is an Ohio corporation with its principal executive offices located at 425 North Martingale Road, Suite 1000, Schaumburg, Illinois 60173. Sparton's common stock is traded on the New York Stock Exchange under the ticker symbol "SPA."

10. Defendant Joseph J. Hartnett ("Hartnett") has served as Sparton's Interim President and Chief Executive Officer since February 2016 and a director of the Company since 2008.

11. Defendant Alan L. Bazaar ("Bazaar") has been a director of the Company since 2016.

12. Defendant James D. Fast ("Fast") has been a director of the Company since 2001.

13. Defendant John A. Janitz ("Janitz") has been a director of the Company since 2016.

14. Defendant Charles R. Kummeth ("Kummeth") has been a director of the Company since 2011.

15. Defendant David P. Molfenter ("Molfenter") has been a director of the Company since 2000.

16. Defendant James R. Swartwout ("Swartwout") has been a director of the Company since 2008.

17. Defendant Frank A. Wilson ("Wilson") has been a director of the Company since 2015.

18. Defendants Hartnett, Bazaar, Fast, Janitz, Kummeth, Molfenter, Swartwout and Wilson are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Ultra is a company organized under the laws of England and Wales with its principal executive offices located at 417 Bridport Road, Greenford, Middlesex, UB6 8UA, UK. Ultra is an international defense, security, transport and energy company. Ultra's common stock is listed on the London Stock Exchange under the ticker symbol "ULE."

20. Merger Sub is an Ohio corporation and an indirect wholly owned subsidiary of Ultra.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Sparton common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal

4

representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 5, 2017, there were approximately 9,860,635 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Sparton or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

24. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

  (a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

  (b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

  (c) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

28. Sparton is an industry leader in designing, developing, and manufacturing complex electronics and electrochemical devices. The Company serves the Medical & Biotechnology, Military & Aerospace and Industrial & Commercial markets through its two business segments: (1) Manufacturing & Design Services ("MDS"), and (2) Engineered Components & Products ("ECP"). Sparton's products and services include, among other things, offerings for Original Equipment Manufacturers and Emerging Technology customers that utilize microprocessor-based systems which include transducers, printed circuit boards and assemblies, sensors and electromechanical components, and related development and design engineering services. Sparton also develops and manufactures sonobuoys, anti-submarine warfare devices used by the U.S. Navy and foreign governments that meet Department of State licensing requirements. ERAPSCO, a 50/50 joint venture ("JV") formed by Sparton and UnderSea Sensor Systems, Inc. ("USSI"), a subsidiary of Ultra, is the sole provider of sonobuoys to the U.S. and foreign governments.

29. On May 9, 2017, the Company issued a press release announcing its third quarter and fiscal year 2017 financial results. Consolidated net sales for the third quarter were $95.4 million and gross profit margin was 17.7%, a 140 bps increase from the previous quarter. With respect to the Company's ECP segment, Sparton reported gross sales of $37.1 million, compared to $32.4 million in the second quarter of 2017. Commenting on the financial results, defendant Hartnett stated:

> Our Medical facilities are continuing to perform well while certain Mil/Aero and industrial facilities experienced unexpected delays in a couple of customer programs. As expected, our ECP Segment performance improved significantly over the prior quarter. Overall, while we are not satisfied with the quarter's results, we are making progress in building a stronger more productive infrastructure while continuing to explore a potential acquisition of the Company.

The Company's Senior Vice President and Chief Financial Officer, Joe McCormack, also commented on the financial results, adding:

> We are pleased that we were able to hold the line on our long-term debt during the quarter in light of investments in infrastructure and working capital needs in the quarter. The management of debt levels, generation of free cash flow and optimization of earnings continues to be a priority of the Company.

30.  On May 15, 2017, Sparton and Ultra announced the award of subcontracts valued at $77.6 million to their ERAPSCO JV for the manufacture of sonobuoys for the U.S. Navy.  its continued strong financial results for the first quarter of 2017.  In the press release, defendant Hartnett stated, "We are proud to contribute to the defense of our great nation and allies throughout the world . . . . We are committed to delivering high-quality products to support that mission." Ultra's Chief Executive Rakesh Sharma was also quoted as stating, "I am pleased that we have secured this important contract that will continue to provide critical sensor capabilities to the U.S. Navy. This contract is a reflection of the increased focus on anti-submarine warfare and the U.S. Navy's commitment to providing key technology for this important mission . . . ."

**The Proposed Transaction**

31.  On July 7, 2017, Sparton issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> Schaumburg, Ill. — (BUSINESS WIRE) — Jul. 7 2017 —Sparton Corporation (NYSE: SPA) ("Sparton") announced today that it had entered into a merger agreement with Ultra Electronics Holdings plc (LSE: ULE) ("Ultra"), pursuant to which Ultra will acquire Sparton for $23.50 per share in cash.
>
> "This transaction is the result of the significant time and effort the Company has

invested in its previously announced process to explore strategic alternatives, including a potential acquisition of Sparton," said Joseph J. Hartnett, Interim President & Chief Executive Officer of Sparton. "We are pleased to have successfully concluded our process with a transaction that delivers significant value to the shareholders of Sparton."

The Board of Directors of Sparton unanimously approved the transaction. The transaction is subject to customary closing conditions, including regulatory clearances and approval of Sparton's and Ultra's respective shareholders, and is expected to close no later than January 1, 2018.

**Insiders' Interests in the Proposed Transaction**

32. Ultra and Sparton insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Sparton.

33. Company insiders stand to reap a substantial financial windfall for securing the deal with Ultra. Pursuant to the Merger Agreement, all unvested equity-based awards held by Company executives will be converted into the right to receive cash payments. The following table sets forth the cash payments certain named executive officers stand to receive from the accelerated vesting of their restricted stocks and restricted stock units ("RSUs"):

|  | Accelerated Vesting of Restricted Shares | | Accelerated Vesting of Company RSUs | | |
|---|---|---|---|---|---|
|  | Aggregate Number of Shares (#) | Cash Value ($) | Aggregate Number of Shares Subject to Company RSUs (#) | Cash Value ($) | Total Cash Value ($) |
| *Named Executive Officers* | | | | | |
| Joseph J. Hartnett | — | — | — | — | — |
| Joseph G. McCormack | — | — | 23,886 | 561,321 | 561,321 |
| Gordon B. Madlock | 7,109 | 167,062 | 16,206 | 380,841 | 547,903 |
| Joseph T. Schneider | — | — | 12,816 | 301,176 | 301,176 |
| Steven M. Korwin | 4,751 | 111,649 | 13,644 | 320,634 | 432,283 |
| *Other Executive Officers* | | | | | |
| Michael A. Gaul | 2,428 | 57,058 | 10,380 | 243,930 | 300,988 |
| James M. Lackemacher | 4,117 | 96,750 | 12,313 | 289,356 | 386,106 |
| James D. Shaddix II | 2,428 | 57,058 | 10,380 | 243,930 | 300,988 |
| Christopher A. Ratliff | 1,390 | 32,665 | 9,252 | 217,422 | 250,087 |

8

34. Further, if they are terminated in connection with the Proposed Transaction, Sparton's named executive officers are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
|---|---|---|---|---|
| Joseph J. Hartnett | 200,000 | — | — | 200,000 |
| Joseph G. McCormack | 659,750 | 568,818 | 45,531 | 1,274,099 |
| Gordon B. Madlock | 479,870 | 551,651 | 40,738 | 1,079,259 |
| Joseph T. Schneider | 421,750 | 303,987 | 41,556 | 767,293 |
| Steven M. Korwin | 421,318 | 435,619 | 40,738 | 897,674 |
| Cary B. Wood | — | — | — | — |

**The Materially Incomplete Proxy**

35. Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Sparton's stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

36. Specifically, the Proxy is deficient and misleading because, *inter alia*, it omits material information about: (i) the background process leading to the Proposed Transaction, including the NDAs Sparton entered into with other potential bidders; (ii) potential conflicts of interest faced by Raymond James and Wells Fargo, the Company's financial advisors; (iii) the Company's financial projections, which were prepared by Company management and relied upon by Raymond James and Wells Fargo in support of their fairness opinions; and (iv) the inputs and assumptions underlying Wells Fargo and Raymond James' financial analyses. Without this material information, Sparton stockholders will be asked to make a voting or appraisal decision on the Proposed Transaction based upon materially incomplete and misleading information.

*Material Omissions Concerning the Background Process Leading to the Proposed Transaction*

37. The Proxy discloses that the Company entered into NDAs with several interested parties beginning in early 2016. Proxy at 32-35; 46-47. The Proxy fails, however, to disclose whether the NDAs contained standstills or "Don't Ask, Don't Waive" ("DADW") provisions that are currently in effect and are presently precluding these parties from making a topping bid for the Company.

38. The disclosure of the terms of the NDAs Sparton entered into with interested parties is crucial to Sparton stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

39. In addition, the Proxy fails to disclose material information concerning a publicly listed supplier of aerospace and defense products and systems, referenced in the Proxy as "Party G." According to the Proxy, following a May 31, 2017 email seeking to make a proposal for the Company, Party G submitted a non-binding proposal to acquire the Company for $22.00 to $24.00 per share on June 6, 2017. The Proxy discloses that:

> [o]n June 13, 2017, at the direction of the process committee and with the consent of Ultra, a representative of Wells Fargo Securities sent to a representative of Party G an email stating that Party G's proposal had been forwarded to the Company board and that once the Company board had a response to such proposal, Wells Fargo Securities would contact Party G.

Proxy at 56. However, the Proxy fails to disclose any details concerning the Board's response to Party G's proposal and any Board discussions related to Party G's proposal.

40. Failure to disclose this information renders the statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Raymond James and Wells Fargo's Potential Conflicts of Interest***

41. The Proxy fails to disclose material information related to Raymond James and Wells Fargo's potential conflicts of interest. The Proxy provides:

> During the two years preceding the date of Raymond James' written opinion, Raymond James has not been engaged by, performed services for or received any compensation from the Company other than any amounts that were paid to Raymond James under the engagement letter described in this proxy statement pursuant to which Raymond James was retained as a financial advisor to the Company board to assist in reviewing strategic alternatives.
>
> For services rendered in connection with the delivery of its opinion, the Company paid Raymond James a customary investment banking fee of $400,000 upon delivery of its opinion. The Company will also pay Raymond James a customary fee for advisory services in connection with the merger of $600,000, $500,000 of which is contingent upon the closing of the merger. The Company also agreed to reimburse Raymond James for its expenses incurred in connection with its services, including the fees and expenses of its counsel, and will indemnify Raymond James against certain liabilities arising out of its engagement.
>
> The Company retained Raymond James as its financial advisor in connection with the proposed merger based on Raymond James' experience and reputation. Raymond James is actively involved in the investment banking business and regularly undertakes the valuation of investment securities in connection with public offerings, private placements, business combinations and similar transactions. In the ordinary course of business, Raymond James may trade in the securities of the Company and Ultra for its own account and for the accounts of its customers and, accordingly, may at any time hold a long or short position in such securities. Raymond James may provide investment banking, financial advisory and other financial services to the Company and / or Ultra or other participants in the merger in the future, for which Raymond James may receive compensation.
>
> * * *
>
> The Company retained Wells Fargo Securities as its financial advisor in connection with the proposed merger based on Wells Fargo Securities' experience and reputation. Wells Fargo Securities is regularly engaged to provide investment banking and financial advisory services in connection with mergers and acquisitions, financings, and financial restructurings. Wells Fargo Securities became entitled to an opinion fee of $750,000 upon the rendering of its opinion. Wells Fargo Securities will also become entitled to receive a transaction fee, currently estimated to be approximately $3 million, based on the implied value of the proposed merger, upon the closing of the merger against which the opinion fee and certain advisory fees will be creditable to the extent previously paid. In addition, the Company agreed to reimburse Wells Fargo Securities for certain

11

> expenses and to indemnify Wells Fargo Securities and certain related parties against certain liabilities that may arise out of Wells Fargo Securities' engagement.
>
> Wells Fargo Securities is a trade name of Wells Fargo Securities, LLC, an investment banking subsidiary and affiliate of Wells Fargo & Company. Wells Fargo Securities and its affiliates provide a wide range of investment and commercial banking advice and services, including financial advisory services, securities underwritings and placements, securities sales and trading, brokerage advice and services, and commercial loans. Wells Fargo Securities and its affiliates may in the future provide investment and commercial banking advice and services to, and has in the past and may in the future otherwise seek to expand its business and commercial relationships with, the Company, Ultra, and/or certain of their respective affiliates, for which Wells Fargo Securities and its affiliates would expect to received compensation. In the ordinary course of business, Wells Fargo Securities and its affiliates may trade or otherwise effect transactions in the securities or other financial instruments (including bank loans or other obligations) of the Company, Ultra and/or their respective affiliates for its own account and for the accounts of its customers and, accordingly, may at any time hold a long or short position in such securities or financial instruments. Wells Fargo Securities and its affiliates have adopted policies and procedures designed to preserve the independence of their research and credit analysts whose views may differ from those of the members of the team of investment banking professionals involved in preparing Well Fargo Securities' opinion. The issuance of Wells Fargo Securities' opinion was approved by an authorized committee of Wells Fargo Securities.

Proxy at 73, 79-80. However, the Proxy fails to disclose (i) whether Raymond James has performed any services for Ultra in the two years prior to its fairness opinion, and any fees received for providing these services; and (ii) whether Wells Fargo has performed any services for the Company and Ultra in the two years prior to its fairness opinion, and any fees received for providing these services.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The omission of this information renders the statements in the "Opinion of Raymond James & Associates, Inc." and "Opinion of Wells Fargo Securities, LLC" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Sparton's Financial Projections*

44. The Proxy fails to disclose material information concerning the Company's financial projections. The Proxy provides projections for certain non-GAAP ("Generally Accepted Accounting Principles") financial measures, including EBITDA, Adjusted EBITDA, Management EBITDA, Unlevered, after-tax free cash flow ("UFCF"), and Adjusted diluted earnings per share (Proxy at 65-66), but fails to provide a reconciliation of the non-GAAP financial measures to their respective most directly comparable GAAP measure.

45. When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

46. Failure to disclose this information renders the statements in the "Unaudited Prospective Financial Information" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Raymond James and Wells Fargo's Financial Analyses*

47. The Proxy describes Raymond James and Wells Fargo's fairness opinions and the various valuation analyses they performed in support of their opinions. However, the description of Raymond James and Wells Fargo's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sparton's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Raymond James and Wells Fargo's fairness opinions

13

in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Sparton's stockholders.

48. For example, with respect to Raymond James' and Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the inputs and assumptions underlying the discount rate range of 12.0% to 14.0% and 12.0% to 13.0% used by Raymond James and Wells Fargo, respectively, in their analysis.

49. With respect to Raymond James' and Wells Fargo's *Selected Companies Analysis*, the Proxy fails to disclose the individual multiples and financial benchmarking metrics for the companies observed by Raymond James and Wells Fargo in their analysis. The disclosure of such multiples and metrics is necessary because they are a crucial element of this analysis, as the analysis is based on comparison and relative valuation. Without such disclosure, stockholders are unable to determine whether the companies observed and the range of multiples selected by Raymond James and Wells Fargo based on the comparable companies were appropriate.

50. Failure to disclose this information renders the statements in the "Opinion of Raymond James & Associates, Inc." and "Opinion of Wells Fargo Securities, LLC" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

51. Defendants' failure to provide Sparton stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make

a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

52. Plaintiff repeats all previous allegations as if set forth in full.

53. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

54. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. The Proxy misrepresented and/or omitted material facts, including material information about the sale process for the Company and the actual intrinsic standalone value of the Company. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

57. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

59. Plaintiff repeats all previous allegations as if set forth in full.

60. The Individual Defendants acted as controlling persons of Sparton within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Sparton and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

63. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sparton, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

17

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Sparton stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

DATED: August 17, 2017

/s/ John C. Camillus
John C. Camillus          (0077435)
Law Office of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio 43214
(614) 558-7254
(614) 559-6731 (Facsimile)
jcamillus@camilluslaw.com

*Counsel for Plaintiff*

OF COUNSEL:

WEISSLAW LLP
Richard A. Acocelli (pro hac vice forthcoming)
Michael A. Rogovin (pro hac vice forthcoming)
Kelly C. Keenan (pro hac vice forthcoming)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com

kkeenan@weisslawllp.com

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff requests a trial by jury.

*/s/* John C. Camillus
John C. Camillus
